978 So.2d 1247 (2008)
Wayne COLBERT and Dawn Colbert
v.
BANK ONE/J.P. MORGAN CHASE.
No. 07-CA-846.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2008.
Rehearing Denied April 21, 2008.
Robert G. Harvey, Sr., Attorney at Law, New Orleans, LA, for Plaintiffs/Appellees.
*1248 John W. Hite, III, Salle, Hite, Rivera & Mercer, Attorney at Law, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
Plaintiffs, Wayne and Dawn Colbert, filed a Rule to Show Cause on August 19, 2005 naming JPMorgan Chase, formerly Bank One ("Chase") as defendant. Wayne Colbert was employed by Chase as a branch manager. Dawn Colbert was employed by Chase as a Senior Training Specialist. Wayne Colbert received a letter, dated May 4, 2005, from the District Manager of Chase advising that his employment had been terminated. Dawn Colbert received a telephone call from the manager at the branch where she worked on May 5, 2005 advising that her employment had been terminated.
Wayne and Dawn Colbert received a letter dated May 5, 2005 from John C. Holt of Global Corporate Security for Chase. This letter advised the Colberts that Chase had chosen to close their BankOne accounts and they were not to enter any branch of Chase or its affiliates, even during business hours. The letter stated that "[y]our JPMorganChase/BANK ONE CORPORATION accounts are being closed and all business relationships between you and this corporation are being ended."
In response, Wayne and Dawn Colbert each sent a letter, dated May 10, 2005, to the Personnel Department of the Bank One branch on Severn Ave. in Metairie, Louisiana, stating that any wages, including benefits, vacation, etc. should be sent to 2668 Foliage Drive, Marrero, Louisiana 70072 immediately. The Colberts allege Chase never paid them the wages plus vacation time they were entitled to. Therefore, pursuant to LSA-R.S. 23:631 and 23:632, the Louisiana Wage Payment Statute, the Colberts sought these wages and vacation pay plus penalties, attorneys' fees and costs from Chase.
Following discovery, Chase filed a Motion for Summary Judgment on January 9, 2007. Chase contended that payment of wages and vacation time had been timely paid to both Wayne and Dawn Colbert. Chase contended that both employees had authorized Chase to direct deposit their wages into their Bank One checking account while employed and this authorization had never been rescinded. Chase stated that Wayne was entitled to a gross amount of $1,133.21, which represented 45.33 hours of work at $24.999077 pre hour, plus 5.33 hours of unused vacation, and 8 unused floating holiday hours. Chase claims the net amount due to Wayne after taxes and benefits, was $971.72. Chase claims this amount was deposited into Wayne's Bank One checking account by direct deposit on May 15, 2005.
Chase claims Dawn was entitled to a gross amount of $1,076.81, which represented 53.33 hours of work at $20.191531 per hour, 13.33 unused vacation hours, and 16 unused floating holiday hours. Chase mistakenly calculated the gross amount due to Dawn $1,750.00. The net amount due to Dawn, based on the mistaken calculation, and after taxes and benefits, was $1,349.03. This amount was deposited into Dawn's Bank One checking account on May 13, 2005.
Tom Murray, District Manager of Chase's retail banking district for this area, and Wayne Colbert's direct supervisor, had also sent a letter to the Colberts on May 5, 2005 informing them that Chase had exercised its right to close their deposit *1249 accounts and enclosed checks for the balances in each account as of that date. The letter also advised the Colberts that their three other accounts, an IRA, a mortgage, and an investment account, could not be closed and the Colberts were responsible for closing those accounts at their earliest convenience. Before this letter was sent, Murray had taken the steps necessary in the computerized retail account management system to close the Colberts' deposit accounts and the accounts were closed.
However, the checking account ending in 3878, which was the account designated for direct deposit of the Colberts paychecks, was re-activated and re-opened on May 11, 2005. In the Chase banking system, the pre-authorized deposit of money into a closed checking account, where the authorization date precedes the date the account was closed, re-activates the account and re-opens it for all purposes. A travel expense reimbursement for Wayne Colbert was authorized before the account was closed and when this deposit of $865.49 was made into the checking account ending in 3878, this closed checking account was re-opened.
Wayne and Dawn Colbert both had direct deposit of their paychecks into their Bank One checking account ending in 3878 during the course of their employment with Chase. Chase's payroll system is automated and the payroll department only becomes aware of the closure of a direct deposit account if a payroll direct deposit attempt is rejected by the bank. If that happens, payroll will issue a live check and mail it to the last known address of the employee. Chase's automated payroll system attempted to deposit the Colberts' final paychecks into the checking account ending in 3878, on May 13 and 16, 2005, and the checking account did not reject the deposit. Therefore, the Colbert's last paychecks were direct deposited into their Bank One checking account and the payroll department was not alerted to any possible closure of the checking account.
The Colberts never contacted Tom Murray, nor any other employee of Chase, to inquire about the status of their final paychecks, prior to filing the Rule to Show Cause. Chase does recognize that it received letters from both Wayne and Dawn on May 10, 2005 stating they would like their final paychecks mailed to their home. However, no action was taken because the letter did not revoke the authorization previously given to Chase to direct deposit their paychecks into their checking account. Chase contends that the Colberts received their final pay in the same manner they had customarily received it during their employment.
Chase also contends that the Colberts logged into the Chase online banking system on June 2 and 13, 2005. Chase argues that the balance and activity for the Colberts' checking account ending in 3878 would have been visible on the opening screen after each of these log-ins. In addition, paper statements were mailed to the Colberts' home address monthly. The statement for the time period of May 11, 2005 through June 9, 2005, and those thereafter, would have reflected the deposits. Therefore, Chase argues the Colberts knew their final paychecks had been deposited directly into their checking account and the Colberts had access to these funds.
Chase's motion for summary judgment was heard on February 17, 2007 and denied on that day. Also on that day, the trial court, with no objections from the parties, granted judgment on the summary proceedings in favor of the plaintiffs. The trial court ruled in open court the day of the hearing, and signed a written judgment *1250 on April 24, 2007. The trial court awarded Wayne Colbert $1,133.21 in past wages, plus ninety days of penalty wages totaling $17,999.34, twenty-five percent attorney fees, all costs and interest. The trial court awarded Dawn Colbert past wages of $1,076.81, plus ninety days of penalty wages totaling $14,537.90, twenty-five percent attorney fees, all costs and interest.
Chase filed a Motion for New Trial which was denied on June 29, 2007. Chase now appeals. For the reasons which follow, we reverse the trial court's judgment.

DISCUSSION
On appeal, Chase argues six assignments of error. By assignments of error numbers one, three, and four Chase argues the trial court erred by ruling that Chase's timely deposit of the full amount of the final paychecks into the account of terminated employees, Wayne and Dawn Colbert, did not comply with La. R.S. 23:631 (Louisiana Wage Statute). Chase also argues the trial court erred by finding that the plaintiffs did not know that Chase had deposited their last paychecks into their account, when it was undisputed that the plaintiffs had twice accessed their account online subsequent to the deposit and it was undisputed that Chase had mailed monthly statements to the plaintiffs reflecting the deposit of the paychecks into their account. Next, Chase argues the trial court erred by requiring Chase to pay plaintiffs the same wages it had already deposited into their account, constituting a double recovery.
La. R.S. 23:631 provides, in part:
A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
(2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records.
We find Chase did not fail to pay or refuse to pay the Colberts their final paychecks after termination. We find Chase paid the Colberts the amounts due to them, within fifteen days of their termination, and in a manner which had been customary during their employment. We recognize that a Chase employee sent a letter to the Colberts indicating that their accounts were closed, and subsequently their paychecks were direct deposited into one of the supposedly closed accounts. We also note that the Colberts requested by letter that their paychecks be mailed to their home address.
However, we also must recognize that the Chase payroll system is automated, therefore, when the paychecks were requested, the computerized system handled the payment in the same manner in which it had for the Colberts' entire employment with Chase. The computerized system paid the Colberts by direct deposit. While this might not have been the most efficient manner in which to handle this matter, we do not find it to be a refusal to pay by Chase.
Therefore, we find that Chase did not violate La. R.S. 23:631. Chase paid the Colberts their final paychecks, within fifteen *1251 days of termination, and in a manner which had been customary during their employment. The statute does provide that payment may be mailed, however, the employer is not required to do so. Despite the mix-up with the account closure and re-opening, we find Chase timely paid the Colberts, in accordance with La. R.S. 23:631.
In addition, we find the Colberts knew, or should have known, that their paychecks had been deposited in their checking account and they had full access to these funds. Chase records indicate the Colberts logged into their online banking system and accessed their accounts twice in June 2005 and received paper statements which would also have indicated these deposits. As former Chase employees, the Colberts had knowledge of the banking system and there is no reason to believe they did not have knowledge that the paychecks had been deposited into their account. Those funds still remain in the checking account of the Colberts and they continue to have access to those funds for withdrawal at any time.
Based on the above, we find the trial court erred in finding that Chase had failed to timely pay the Colberts their final paychecks in violation of La. R.S. 23:631. We reverse the award of past wages of $1,133.21 for Wayne Colbert and $1,076.81 for Dawn Colbert and find that these amounts remain in their Chase banking account for their withdrawal at any time.
By assignments of error number two and five, Chase argues the trial court erred by finding that it had acted in "bad faith" pursuant to the Louisiana Wage Statute. Chase argues it was undisputed that Chase had timely direct deposited the full amount of the last paychecks into the account of the plaintiffs, which was the ordinary and customary manner of paying the plaintiffs during their employment. In addition, Chase argues it was undisputed that at all times Chase fully believed it had complied with the Louisiana Wage Statute and the trial court erred by allowing the plaintiffs to manufacture and create a claim under the Louisiana Wage Statute and wrongfully enrich themselves with penalties and attorney's fees and cause needless, frivolous and unnecessary litigation.
La. R.S. 23:632 states:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
Since we have found that Chase did not violate the provisions of La. R.S. 23:631, we find the Colberts are not entitled to penalties, attorney fees and costs pursuant to La. R.S. 23:632. We also agree with Chase that it did not act in bad faith. As discussed above, Chase's payroll system is automated and the payments were made to the Colberts as they always had been. The Colberts did not contact Chase to indicate a problem. As far as Chase's records were concerned, the Colberts had been timely paid. Chase was not aware of a problem. This is not a situation which warrants penalties due to a failure to pay. *1252 Again, we recognize the mix-up and issues related to the account closure and re-opening, however, we find this does not warrant the payment of penalties by Chase. We also find the Colberts are not entitled to attorney fees or costs.
Finally, by assignment of error number six, Chase argues the trial court erred by failing to give reasonable notice of the trial pursuant to La. C.C.P. art. 2594 and 2595, which require that a copy of the Order assigning the date of the trial be served upon the defendant, and the trial court further erred by deciding the summary proceeding based "on the pleadings." We find the trial court did not err in deciding this summary proceeding on the pleadings. At the hearing on the motion for summary judgment, the trial court indicated that it was the court's understanding that the parties had no objection to deciding the matter on the pleadings. Chase's counsel was present at that hearing and indicated no objection. Therefore, we find the trial court properly moved forward with summary proceedings deciding the matter on the pleadings.
Accordingly, we reverse the judgment of the trial court awarding the Colberts past wages, penalties, attorney fees, and costs.
REVERSED.